# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# GREENWOOD DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | Civil Action No. 8:16-cv-147-BHH |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **DECREE AND JUDGMENT OF** |
| Benjamin Roy Massey, Havird Oil Co., ) | **FORECLOSURE AND SALE** |
| J. Brandon Crawford, Carter Trucking Co.,) | |
| South Carolina Department of Revenue, ) | |
| Branch Banking & Trust Co. of South ) | |
| Carolina, and Saluda County, ) | |
| ) | |
| Defendants. ) | |

## BACKGROUND AND FACTUAL/LEGAL DETERMINATIONS

Plaintiff commenced this action to foreclose on property located in Saluda County, South Carolina, for failure to repay loans made through the United States Department of Agriculture. Defendants in this suit include the debtor, Benjamin Roy Massey ("Massey" or "debtor"), and several parties with lien interests in the debtor's real and/or personal property.

Plaintiff's action stems from four promissory notes. Massey executed the first note ("Note 1") on May 29, 2007, promising to pay to the order of the United States the sum of $188,400.00 at an interest rate of 5.125% per annum. (ECF No. 7-2 at 1-3.) Massey executed the second note ("Note 2") on June 11, 2007, promising to pay to the order of the United States the sum of $200,000.00 at an interest rate of 5.125% per annum. (*Id.* at 4-6.)[1] Massey executed the third note ("Note 3") on July 28, 2008,

---

[1] Plaintiff inadvertently attached an unexecuted copy of Note 2 to the amended complaint and the motion for default judgment. (*See* ECF Nos. 7-2 at 4-6; 32-2 at 4-6.) However, an executed copy of Note 2 has since been filed as a supplement to the default judgment motion. (ECF No. 36.)

1

promising to pay to the order of the United States the sum of $105,000.00 at an interest rate of 5.000% per annum. (*Id.* at 7-10.) Massey executed the fourth note ("Note 4") on July 28, 2008, promising to pay to the order of the United States the sum of $75,000.00 at an interest rate of 3.625% per annum.[2] (*Id.* at 11-14.)

Plaintiff has pled that Massey, in order to provide security for the loans, granted and delivered to Plaintiff three real estate mortgages, dated May 29, 2007, June 11, 2007, and July 28, 2008, covering certain real property situated in Saluda County, South Carolina. (Am. Compl., ECF No. 7 ¶ 8.) Plaintiff represents: (1) that the tract of land secured by the mortgages dated May 29, 2007 and June 11, 2007 was foreclosed upon by South Carolina Rural Rehabilitation Corporation ("SCRRC") and sold on September 6, 2011; (2) that Plaintiff's mortgages on that tract of land were subordinate to SCRRC's mortgage; and (3) that after SCRRC's mortgage was paid off, Plaintiff received surplus proceeds from the foreclosure in the amount of $158,620.54, which were applied to Massey's outstanding balance owed to Plaintiff.[3] The mortgage filed on July 28, 2008 ("the mortgage") secures the property that is the subject of this action and is of record in the Office of the Clerk of Court for Saluda County, South Carolina in Book 849, at Page 7. (ECF No. 7-3.) The mortgage secures two tracts of land, more specifically described in Exhibit A thereto. (*See id.* at 5.)

To further secure his indebtedness owed Plaintiff, Massey executed security agreements dated May 29, 2007, June 11, 2007, and July 28, 2008, which granted to

---

[2] Note 4 confusingly states the interest rate both as "THREE AND FIVE EIGHTS [sic] percent" and "3.685%" per annum. (ECF No. 7-2 at 11.) The numerical representation appears to be an inaccurate calculation of the agreed upon rate of three and five eighths ($3\frac{5}{8}$) percent. The accurate calculation of the rate is 3.625%, not 3.685%. Plaintiff does not dispute this, given Plaintiff's own itemization of the applicable rate as "3.625%" in paragraph 6 of the amended complaint. (*See* ECF No. 7 at 2.)
[3] Accordingly, Plaintiff did not attach the May 29, 2007 and June 11, 2007 mortgages to the amended complaint, nor are they a subject of the instant proceeding.

Plaintiff a security interest in beef cows, dairy cows, and bred heifers, then owned or thereafter acquired, together with all increases, replacements, substitutions, and additions thereto, as well as a security interest in certain crops grown on acreage located in Saluda County, and all equipment and fixtures associated with the dairy barn. (ECF No. 7-4.) Plaintiff has plead that it perfected its security interest by filing two financing statements, duly recorded in the Office of the Secretary of State of South Carolina on June 4, 2007 and July 30, 2008,[4] a continuation statement on April 11, 2013, also duly recorded (*see* ECF No. 32-5 at 4), and a fixture filing, duly recorded in the Office of the Saluda County Clerk of Court on July 28, 2008 (*see id.* at 1-3).

Plaintiff filed this suit on January 15, 2016, claiming that Massey defaulted on the loans, and that Plaintiff is therefore entitled to: (1) judgment on the debt; (2) foreclosure on the real property; (3) foreclosure on the personal property; and (4) costs and expenses, including reasonable attorney fees. The initial complaint alleges the following competing lien interests in Massey's property: (1) Havird Oil Co. ("Havird") may have a claim by virtue of a judgment dated November 24, 2009 and recorded December 3, 2009; (2) J. Brandon Crawford ("Crawford") may have a claim by virtue of a judgment dated August 2, 2010 and recorded August 5, 2010; (3) Carter Trucking Co. may have a claim by virtue of a judgment dated September 20, 2010 and recorded September 30, 2010; (4) the South Carolina Department of Revenue ("SCDOR") may have a claim by virtue of tax liens recorded January 14, 2010, August 4, 2010, and an unpaid balance for 2015; (5) Branch Banking & Trust Co. of South Carolina ("BB&T") may have a claim by virtue of a deficiency judgment recorded June 7, 2011; and (6) the Internal Revenue Service may have a claim by virtue of a federal tax lien recorded on August 31, 2012.

---

[4] These financing statements are not attached to the amended complaint or motion for default judgment.

3

(ECF No. 1 ¶¶ 12-17.)

Plaintiff filed an amended complaint on February 1, 2016, removing Martha Ann Massey as a defendant and adding Saluda County as a defendant. The amended complaint alleges an additional competing lien interest in Massey's property: Saluda County may have a claim as a result of unpaid property taxes in Massey's name, owed to Saluda County for the year 2015. (ECF No. 7 ¶ 18.)

All defendants were served with the summons, complaint, and amended complaint; only Crawford and SCDOR filed answers (ECF Nos. 10; 12; 17). On August 8, 2016, Plaintiff filed a motion for default judgment and request for a damages hearing (ECF No. 32). None of the defendants responded to Plaintiff's motion for default judgment and request for a damages hearing.

Having reviewed the evidence and the entire record in this case, the Court concludes as follows:

1.     Massey has defaulted on the obligations set out in Note 1, Note 2, Note 3, and Note 4.

2.     Massey's refusal to pay the amount owed required Plaintiff to hire counsel and incur costs to collect on the notes. Since the inception of the action, Plaintiff's counsel have assumed responsibility for the institution of this action and have searched and updated the title on the real property from the date the current owner received the property, or the date the mortgages were executed, to the date of the filing of the *lis pendens*. Plaintiff's counsel have been responsible for the preparation of the following:

    (1)    *Lis pendens*;
    (2)    Summons and Complaint;
    (3)    Amended Complaint;
    (4)    Motion for Default Judgment and Request for Damages Hearing;

(5)   Proposed Decree of Foreclosure and Sale;
(6)   Other documents as applicable pertaining to service and finalization of this action.

Further duties will include: forwarding copies of this Order to each defendant; advising each defendant of the date the property will be sold; arranging and coordinating the amount to be bid by Plaintiff; representing Plaintiff at sale; and preparing after sale documentation, as required.

The promissory notes provide that Plaintiff is entitled to collection costs including reasonable attorneys' fees, and Plaintiff requests that the Court award $1,750.00 in attorneys' fees. (*See* Ryan Aff., ECF No. 37-2.) In light of the potential liabilities inherent in a property action and the amount of the mortgage debt at issue, the attorneys' fees requested by Plaintiff are reasonable and shall be added to the total debt owed.

3.   As of January 24, 2017, the amount due and owing on the notes, with interest at the rates provided therein, and other costs and expenses of collection, including attorneys' fees, secured by the notes and mortgage was as follows:

| | | |
|---|---|---|
| a. | Principal due and interest as of 1/24/17 at the rate of $31.5428 per diem | $322,147.82 |
| b. | Cost of collection prior to hearing (service, filing, etc.) | $   1,545.40 |
| c. | Attorneys' fees | $   1,750.00 |
| | TOTAL debt secured by notes and mortgage, including interest to January 24, 2017: | **$325,443.22** |

(*See* Fee Aff., ECF No. 37-1; Ryan Aff., ECF No. 37-2.)

4.   Interest continues to accrue on the debt stated above at a per diem rate of $31.5428.

5.   The lien interests of Havird, Crawford, Carter Trucking Co., SCDOR,

5

BB&T, and Saluda County are junior to Plaintiff's lien interest in the real property.[5] As a result, Plaintiff's mortgage lien against Massey constitutes a first mortgage lien on the real property described in "Exhibit A to Mortgage From Benjamin Roy Massey To USDA/Farm Service Agency Dated July 28, 2008" (ECF No. 7-1).

6.     The security interests against Massey's personal property (livestock, equipment, and fixtures associated with the dairy barn) are perfected and also constitute a first lien on the property described in the documents entitled, "Security Agreement (Chattels and Crops)," dated May 29, 2007, June 11, 2007, and July 28, 2008 (ECF No. 7-4).

7.     Therefore, Plaintiff is entitled to foreclose on its mortgage and to recover the personal property in which it has a security interest. Further, Plaintiff is entitled to sell the property described in its mortgage (*see* ECF No. 7-1) and security agreements (*see* ECF No. 7-4) and apply the proceeds first to the costs and expenses of this action, next to the payment and discharge of the debt Massey owes Plaintiff.

---

[5] In his three-paragraph answer, Crawford "denies each and every allegation contained in the Amended Complaint of the Plaintiff not specifically admitted hereto." (ECF No. 17 ¶ 1.) Crawford does not does not explain how its interest in the real property at issue is putatively superior to Plaintiff's interest. Indeed, Crawford does not expressly contest priority. Nor did Crawford respond to Plaintiff's motion for default judgment. Crawford's answer merely states: "this Defendant would show that it holds a judgment upon the subject real property." (*Id.* ¶ 3.) This much is true; however, that judgment was recorded in August 2010 (*see* ECF No. 32-7), two years after Plaintiff recorded the Mortgage, and the Court finds that Plaintiff's interest in the real property is superior. Similarly, in its three-paragraph answer, SCDOR denies in conclusory fashion "each and every allegation" in the amended complaint, save for the fact that it may have a claim in the property described in the amended complaint by virtue of state tax liens. (ECF No. 12 ¶¶ 1, 3.) SCDOR attaches fifteen pages of tax liens to substantiate its potential claim; however, fourteen of these pages pertain to a 6% sales tax and a "local option sales" tax owed by a corporate entity, "MASSEYS TIRE AUTO & FEED INC" (presumably a business owned by Massey), and not to Massey individually. (*See* ECF No. 12-1 at 1-14.) The one SCDOR tax lien that applies to Massey in his individual capacity, showing the address of the real property that is the subject of this action as his address of record, was assessed in December 2014 and filed with the Clerk of Court Saluda County in February 2015, long after Plaintiff perfected its interest in the real and personal property at issue here. (*See* ECF Nos. 12-1 at 15; 32-8 at 1.) SCDOR, in its answer, made no attempt to explain how the tax liens it maintains are putatively superior to Plaintiff's interest in the subject property. Nor did SCDOR respond to Plaintiff's motion for default judgment. Accordingly, the Court finds that Plaintiff's interest in the subject property has priority over any interest maintained by SCDOR.

6

8.      Finally, the Court notes that Plaintiff requests a deficiency judgment.

## LEGAL STANDARD

Although "the government's power to foreclose [on property] emanates from state law, [28 U.S.C. §§ 2001 and 2002] govern the procedures to be followed [by federal courts]." *U.S. v. Wise*, No. 5:14-cv-844-FL, 2015 WL 5918027, at *6 (E.D.N.C. Oct. 9, 2015). Pursuant to § 2001, a federal court has wide discretion to determine the terms and conditions under which the sale of real property shall be executed; however, the sale must take place "at the courthouse of the county . . . in which the greater part of the property is located, or upon the premises or some parcel thereof located therein, as the court directs." Further, under § 2002, notice shall be "published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district of the United States wherein the realty is situated." When personal property is sold under federal court order, 28 U.S.C. § 2004 states that it should be sold in accordance with § 2001, unless the court directs otherwise.

## ORDER OF FORECLOSURE AND SALE

It is hereby **ORDERED:**

1.      The Clerk of Court is directed to enter judgment in favor of Plaintiff in the amount of **$325,443.22** plus interest at a per diem rate of $31.5428 beginning on January 24, 2017.

2.      The Clerk of Court is directed to enter a judgment of foreclosure as to Plaintiff's security interest in Massey's real and personal property at issue in this matter, as more fully described in "Exhibit A to Mortgage From Benjamin Roy Massey To

USDA/Farm Service Agency Dated July 28, 2008" (ECF No. 7-1), and the documents entitled, "Security Agreement (Chattels and Crops)," dated May 29, 2007, June 11, 2007, and July 28, 2008 (ECF No. 7-4).

3.     The Special Referee, or his designee, shall sell at public auction the property described in "Exhibit A to Mortgage From Benjamin Roy Massey To USDA/Farm Service Agency Dated July 28, 2008" (ECF No. 7-1) at the Saluda County Courthouse in Saluda, South Carolina, at the earliest possible date after having published notification of the sale in the **Saluda Standard-Sentinel**, a newspaper of general circulation in Saluda County, South Carolina, once a week for four weeks prior to the sale. The Special Referee, or his designee, shall sell at public auction the property described in the documents entitled, "Security Agreement (Chattels and Crops)," dated May 29, 2007, June 11, 2007, and July 28, 2008 (ECF No. 7-4), at public auction at the Saluda County Courthouse in Saluda, South Carolina, or another commercially reasonable location(s) as may be determined by the Special Referee, or his designee, at the earliest possible date after having published notification of the sale in the **Saluda Standard-Sentinel** for four weeks prior to the sale. The sale of the real and personal property itemized above shall be made on the following terms:

   a. For cash: The Special Referee, or his designee, shall require the highest bidder, other than the Plaintiff, to make a cash deposit of 5% of the bid as a guaranty of good faith and as security for compliance with the bid;

   b. If the highest bidder should fail to comply with the terms of the sale within 10 days after acceptance of the bid, the entire deposit shall be forfeited and applied to the debt owed Plaintiff. Thereafter, the Special Referee, or his designee, shall re-advertise and resell the real and personal property itemized above on the earliest possible date and on the same terms and conditions described herein;

   c. The sale shall be subject to taxes and assessments, which includes real

property taxes, existing easements, and easements and restrictions of record.

The following additional terms shall apply to the sale of the real property described in "Exhibit A to Mortgage From Benjamin Roy Massey To USDA/Farm Service Agency Dated July 28, 2008" (ECF No. 7-1):

a. Interest on the balance of the bid shall be paid to the day of compliance at the per diem rate of $31.5428;

b. Purchaser is to pay for the deed stamps and costs of recording the deed;

c. As Plaintiff requests a deficiency judgment, bidding shall remain open until the 30th day after the sale, exclusive of the day of the sale, and any person other than the highest bidder at the sale or any representative thereof may enter a higher bid by making a cash deposit of 5% of the bid as a guaranty of good faith, and thereafter within the 30 day period any other person, other than the highest bidder at the sale or any representative thereof, may in a like manner raise the last highest bid. The successful purchaser shall be the person who submitted the highest bid within the 30 days and made the necessary deposit. If the 30th day falls on a Sunday, the bidding shall be closed on the Monday immediately following;

d. Plaintiff may become a purchaser at the sale, but Plaintiff is precluded from making any bid on the property other than the last bid made by it on the day of the sale;

e. Each defendant named herein and all persons, whoever claiming under them, shall be forever barred and foreclosed of all right, title, interest, and equity of redemption in the real and personal property itemized above, or any part thereof;

f. If Plaintiff or Plaintiff's representative does not appear at the scheduled sale of the real and personal property itemized above, then the sale of the property shall be null, void and of no force and effect. In such event, the sale will be rescheduled for the next available sales day.

4. The Special Referee, or his designee, shall apply the proceeds of the sale of the property described in "Exhibit A to Mortgage From Benjamin Roy Massey To USDA/Farm Service Agency Dated July 28, 2008" (ECF No. 7-1) and the documents

9

entitled, "Security Agreement (Chattels and Crops)," dated May 29, 2007, June 11, 2007, and July 28, 2008 (ECF No. 7-4), as follows:

    a. To the payment of the amount of the costs and expenses of this action and the expenses of the sale;

    b. To Plaintiff, or Plaintiff's attorney, for the debt and interest Massey owes Plaintiff, or such thereof as the purchase money will pay on the same;

    c. Any surplus funds will be held pending further order of this Court.

5. If Plaintiff is the successful bidder at the sale for a sum not exceeding the amount of costs, expenses, and debt Massey owes Plaintiff, Plaintiff may pay to the Special Referee, or his designee, only the amount of the costs and expenses, accrediting the balance of the bid to Massey's indebtedness.

6. After the sale of the real property described in "Exhibit A to Mortgage From Benjamin Roy Massey To USDA/Farm Service Agency Dated July 28, 2008" (ECF No. 7-1), the Special Referee, or his designee, shall make and deliver to the purchaser a deed in fee simple, and the purchaser shall be let into possession of that real property upon production of the deed. All persons holding adversely to the purchaser shall be ejected by the United States Marshal (or deputy).

7. The undersigned will retain jurisdiction to do all necessary acts incident to this foreclosure, including, but not limited to, the issuance of a Writ of Assistance. After sale of the property described in "Exhibit A to Mortgage From Benjamin Roy Massey To USDA/Farm Service Agency Dated July 28, 2008" (ECF No. 7-1), and as soon as the sale by the Special Referee, or his designee, is complete and has been approved by the court, Massey or other persons in possession, shall within 15 days of the date of approval by the Court, move from the premises, and give up the real property itemized

above without damage or vandalism. Upon the failure of Massey or any other persons in possession, to vacate the property within 15 days of the date of approval by the Court, the United States Marshal (or deputy) is authorized, empowered, and directed to enter upon the real property itemized above and evict them therefrom, unless prior to such date, Massey or other persons in possession, obtain from the Court an order extending the time which Massey or any other persons in possession shall have to vacate the property. The United States Marshal (or deputy) is also authorized to effect removal from the real property itemized above any furniture or other possessions of Massey or other persons in possession, and any interference with the activities of the Special Referee or the United States Marshal (or deputy) will be upon pain of contempt of Court.

      8.    Massey shall assemble and turn over possession of all personal property described in the documents entitled, "Security Agreement (Chattels and Crops)," dated May 29, 2007, June 11, 2007, and July 28, 2008 (ECF No. 7-4), plus any increases, replacements, or substitutions, to Plaintiff within 30 days of the date of this Order. Massey may contact the Farm Service Agency Supervisor's Office in Saluda County, South Carolina, to arrange a mutually agreeable time to turn over this property. Should Massey fail to turn over the personal property itemized above within 30 days, the United States Marshal (or deputy) is directed and authorized to take all reasonable steps necessary to seize that personal property and turn it over to Plaintiff for sale. This may include entering onto the real property described in "Exhibit A to Mortgage From Benjamin Roy Massey To USDA/Farm Service Agency Dated July 28, 2008" (ECF No. 7-1), to locate and seize the personal property itemized above. Should the United States Marshal (or deputy) be required to seize the property, Plaintiff shall be

responsible for taking possession of the property for purpose of sale.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

Greenville, South Carolina
February 3, 2017

12